UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EARL LAWHEAD, | No. 2:16-cv-01288 GEB AC P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| STU SHERMAN, | |
| Respondent. | |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on June 7, 2016,[1] ECF No. 1 in which petitioner raises two claims: (1) that the trial court abused its discretion in declining to dismiss four of his five prior strike convictions; and (2) that his sentence amounts to cruel and unusual punishment. Respondent has answered, ECF No. 12, and petitioner has declined to file a traverse within the allotted time.

## BACKGROUND

I.   Proceedings In the Trial Court

  A.   Prosecution Case

On July 25, 2010, at approximately 10:45 a.m., Tifanee Blue was walking across a Citrus

---

[1] See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1

1   Heights parking lot.  Blue, a Blockbuster store shift manager, was on her way to make a bank
2   deposit of $1,157.75.  A dark purple PT Cruiser adorned with 'ghost-like' flame decals cut Blue
3   off and parked in a disabled parking space.  The driver of the car opened the door, moved his left
4   leg out of the car, and produced a small semiautomatic handgun.  He was dressed in jean shorts, a
5   dark shirt, dark wrap-around sunglasses, and a baseball cap.  The driver ordered Blue to give him
6   the deposit bag.  She did so and the driver shut the door and drove away.

7       Blue called dialed 911 and an officer responded a few minutes later.  Blue described the
8   man who had robbed her as a white male somewhere between twenty and thirty.  Officers
9   attempted to locate the PT cruiser using city records, but were unsuccessful in doing so.  Days
10  prior to the robbery, however, police officers conducting unrelated surveillance observed a PT
11  cruiser matching the relevant description.  One of the officers took down the plate number and
12  ultimately forwarded it to the detective investigating the July 25 robbery.  After obtaining the
13  plate number, officers determined that the car was registered to petitioner and Annette Dustin.

14      As of July 25, 2010, petitioner was assigned to parole agent Jerry Riggs.  Riggs last saw
15  petitioner on July 27, 2010 and, on that date, learned that petitioner had been evicted from his
16  apartment and was trying to secure lodging with his stepfather.  Petitioner stated that he would
17  not be at his stepfather's home for several days, however, and would instead be sleeping in a car
18  at a friend's place in the interim.  He did not provide Riggs with a precise address for his friend's
19  place.  Riggs was informed that petitioner was a suspect in the July 25 robbery later that day, but
20  was unable to provide investigators with petitioner's immediate whereabouts.  Petitioner failed to
21  appear at the next parole meeting on August 4, 2010.

22      On September 8, 2010, Sacramento County Sheriff's Deputy David Treat acted on a tip
23  and went to a location in the hopes of apprehending petitioner.  After arriving, Treat saw a Toyota
24  Camry being driven by a woman.  He noticed that there was a passenger in the front seat of the
25  Camry who was slumped down and had the bill of his hat covering his face.  Treat followed the
26  Camry and two other patrol vehicles joined the pursuit shortly thereafter.  Eventually the Camry
27  pulled into a McDonald's parking lot.
28  ////

The driver of the Camry raised her hands and petitioner, who was the passenger, put a handgun in his mouth. Treat ordered the woman out of the Camry and she complied. Petitioner then got out of the car and, still holding the handgun, said he wanted the officers to kill him. Petitioner repeatedly entered and exited the car during the ensuing standoff. During the standoff, petitioner told a police negotiator that "he did what he did" because he needed money. He also related that he had been evicted from his apartment and had issues with his mother due to his methamphetamine use. The standoff eventually ended and petitioner was taken into custody.

Officers recovered a handgun that had been stolen during a burglary on September 5, 2010. During a recorded jail visit with a relative, petitioner admitted that he knew the gun was stolen.

B. Defense Case

Annette Dustin, petitioner's mother, testified that she had seen someone other than petitioner driving the PT cruiser used in the robbery. She stated that she did not recognize the driver. Dustin claimed that she had relayed this information to Riggs in May or June of 2010. After petitioner's arrest, Dustin reported the car stolen because petitioner no longer had it and she wanted it back.

Dustin also testified that, after petitioner's prior term in prison ended, he had secured two jobs and that she had assisted him in obtaining an apartment and car. This brief period of stability ended, however, when petitioner began using drugs. As noted above, the relationship between petitioner and Dustin deteriorated when she learned of his drug use.

C. Outcome

The jury found petitioner guilty of (1) second degree robbery (Cal. Penal Code § 211); (2) two counts of being a felon in possession of a firearm (Cal. Penal Code § 12021(a)); (3) receiving a stolen firearm (Cal. Penal Code § 496(a)); and (4) exhibiting a firearm to resist and prevent arrest (Cal. Penal Code § 417.8). 2 CT 331. The jury also found true an enhancement for personal use of a firearm under Cal. Penal Code § 12022.53(b). Id.

D. Romero Motion

After a trial on the prior conviction allegations, the trial court determined that petitioner

had five prior, serious felony convictions. 1 CT at 8. Petitioner filed a motion pursuant to People v. Superior Court (Romero), 13 Cal. 4th 497 (1996) in which he argued that the prior convictions were not strikes and, in the alternative, four of his five prior convictions should be stricken because they amounted to a continuous course of conduct. 1 CT 265-278. The trial court denied petitioner's Romero motion. Id. at 8. Petitioner was sentenced to an indeterminate term of one hundred years to life and a determinate term of fifteen years. 2 CT 331-332.

II.     Post-Conviction Proceedings

Petitioner timely appealed, and the court of appeal remanded for the purpose of staying either (1) the sentence for receiving a stolen firearm or (2) the sentence for being a felon in possession of a firearm. Lodg. Doc. 11. As respondent notes, this effectively reduced petitioner's sentence to an aggregate term of ninety years to life (75 years to life in addition to a fifteen year, consecutive, determinate sentence). ECF No. 12 at 10. The court of appeals otherwise affirmed the judgment. Lodg. Doc. 11. The California Supreme Court denied review on June 10, 2015. Lodg. Doc. 13. The instant federal petition, dated June 7, 2016, was docketed on June 10, 2016. ECF No. 1.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits

4

absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must

////

5

determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 101-102.

## DISCUSSION

I.   Claim One: Denial of Romero Motion

    A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that the trial court abused its discretion in denying his Romero motion. He claims that the trial court should have dismissed at least four of his five prior strikes as to all, or at least, subordinate counts. ECF No. 1 at 25.

    B. The Clearly Established Federal Law

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

    C. The State Court's Ruling

The state court of appeal denied this claim in a reasoned decision:

> Defendant contends it was an abuse of discretion for the trial court not to dismiss at least four of his five prior strike convictions as to all counts or dismiss four strike convictions as to the subordinate counts. We disagree.
>
> A trial court has the authority to dismiss a strike conviction allegation in the interests of justice under section 1385, subdivision (a). (*Romero*, *supra*, 13 Cal.4th at p. 504.) A trial court also has the discretion to dismiss strike allegations on a count-by-count basis. (People v. Garcia (1999) 20 Cal.4th 490, 499 (*Garcia* ).) We review a trial court's refusal to dismiss strike allegations under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony* ).)
>
> "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.]

Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377.)

In deciding whether to exercise its discretion to dismiss strike allegations, courts must determine whether the defendant should be deemed outside the spirit of the three strikes law and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies. (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams* ).) In making this determination courts must consider three circumstances: (1) the nature and circumstances of his present felony; (2) the nature and circumstances of his strike offense; and (3) the particulars of the defendant's background, character, and prospects for the future. (*Ibid.*)

Defendant asserts the trial court's failure to dismiss four of the five strikes was an abuse of discretion because "the trial court did not consider all relevant sentencing factors which supported dismissing some of [defendant]' s prior strikes, and it also failed to consider viable sentencing alternatives." According to defendant, the trial court did not consider that defendant's adult criminal history consists entirely of the current offenses and all of the strikes "occurred during the same incident." He claims the trial court did not consider that defendant was 17 when he committed the strikes, "more than a decade before the current offenses." Defendant further claims the trial court's statement, "I don't have a lot of options available to me as much as I wish that I did" was wrong, as it could have dismissed four of the strikes on all counts or just the subordinate terms.

Defendant argues on appeal that dismissing all of his strikes produces a sentence of 22 years 4 months, and dismissing four of the five strikes leads to a sentence of 29 years 8 months. Imposition of the latter sentence would mean he would not be eligible for parole until he was 55 and therefore unlikely to reoffend. Defendant also argues on appeal that the trial court could have sentenced defendant to 25 years to life by dismissing the strike allegations as to the subordinate terms. (*See Garcia*, *supra*, 20 Cal.4th at p. 499.) Arguing that the robbery "was a relatively minor offense that resulted in the theft of less than $1,200" in which he made no explicit threats to use the gun against the victim and nobody was injured, defendant maintains that a sentence of 115 years to life for a 29 year old based on the instant charges "exceeds the bounds of reason."

As our high court has noted, "any failure on the part of a defendant to invite the court to dismiss under section 1385 following *Romero* waives or forfeits his or her right to raise the issue on appeal. [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at pp. 375–376.) Based on this, we hold that a defendant forfeits any claim that the trial should

7

have found defendant partially outside the spirit of the three strikes law and dismissed strikes as to only some counts pursuant to *Garcia*, *supra*, 20 Cal.4th 490 if that request is not made in the trial court. Here, defendant did ask the trial court to treat all of the strikes as a single strike and further asked the court to dismiss strikes, but he never proposed the alternative of dismissing four strikes as to the subordinate terms. His contention that the trial court should have considered that option is forfeited.

As for the option of dismissing strike allegations on all counts, contrary to defendant's assertions, there is no indication that the trial court was unaware of its discretion to do so. Indeed, that was one of the two options defendant argued in the trial court. And the prosecution opposed defendant's request to dismiss strikes in its written opposition, arguing it was not in the interest of justice to do so under the analysis in *Williams*, *supra*, 17 Cal.4th 148.

Defendant seizes upon the trial court's statement, "defendant himself has left me very few options here. I'm not sure that I have any options here," as evidence the court misunderstood its discretion under section 1385. The trial court's statement that it did not have any options was not made when deciding the *Romero* motion. Rather, the court said that *after* the *Romero* motion was denied, well after the sentencing hearing had commenced, just before it imposed sentence. Examined in its proper context, this statement accurately reflects the law. Denial of the *Romero* motion meant defendant was to be sentenced under the three strikes law, which mandates consecutive sentences of 25 years to life for each felony "not committed on the same occasion, and not arising from the same set of operative facts." (§ 667, subd. (c)(6); *People v. Lawrence* (2000) 24 Cal.4th 219, 222–223.) Once the trial court denied the *Romero* motion, it had to impose consecutive 25 years to life terms for all four of defendant's felony convictions.

As for defendant's age, the lapse of time between the strike offenses and the current offense, defendant's substance abuse problem and the facts that defendant did not expressly threaten to shoot the victim here and nobody was hurt, the trial court was well aware of those circumstances. It reviewed the probation report and presided over the trial. Even when we factor the circumstances defendant highlights here into the three-prong analysis outlined by our high court in *Williams* (*Williams*, *supra*, 17 Cal.4th at p. 161), we conclude the court's decision not to dismiss any strikes was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377.)

### 1. Nature and Circumstances of the Current Offense

The strike offense was violent and involved the use of a gun. It showed a level of planning and sophistication in that defendant targeted an individual who was on her way to make a deposit of store receipts. In light of the fear defendant caused, we conclude that any mitigation from the fact that he did not expressly threaten to use the gun and did not hurt the victim during this armed robbery was minimal.

8

> To make matters worse, defendant engaged in a lengthy public standoff with sheriff's deputies, in an apparent attempt to induce the deputies to shoot him. The trial court correctly found that the situation defendant created posed a threat to public safety.
>
> The current offenses were not part of a single incident, but involved at least three separate criminal acts, all involving a firearm: obtaining the stolen gun, the armed robbery, and finally, the armed standoff with the police.
>
> **2. Nature and Circumstances of the Strike Convictions**
>
> The prior strike offenses were not non-violent; they involved a burglary turned home invasion. It seems defendant could have walked away from the burglary, but instead confronted the victim and her young son. Defendant pulled the slide of his gun back and pointed the gun at the victim's head. The victim no doubt thought she and her son were going to be killed and she begged defendant to spare their lives. There is nothing mitigating about these offenses. Indeed, these offenses are extremely aggravating.
>
> **3. Defendant's Background, Character, and Prospects for the Future**
>
> Defendant had a criminal history beginning when he was 14 years old. One of his five juvenile adjudications involved burglary and possession of a firearm.
>
> Defendant was 17 when he committed his prior strike offenses, but he was old enough and his crimes were sufficiently serious for him to be tried as an adult. The 11 years between his strikes and the current offenses is not the result of some break in criminal activity. Defendant was incarcerated for most of that time, and committed the current offenses a little more than a year after his release from prison.
>
> Defendant's life is one of almost continuous offending, a lengthy juvenile record including several felonies, followed by five strike convictions, and then the current offenses a relatively short time after his release from prison and while he was on parole. And it seems defendant was prepared to go on a crime spree. During a recorded jail visit conversation, defendant remarked, "It's good that it happened the way it did. It's good that it's only three charges and not 50. Cause another month and it would have been 50."
>
> Defendant's current crimes and criminal history show that when he is not incarcerated, he is highly likely to commit violent offenses involving the use of firearms. It was not an abuse of discretion to deny his *Romero* motion.

Lodg. Doc. 11 at 9-13.

////

9

D.  Objective Reasonableness Under § 2254(d)

As a preliminary matter, the court notes that respondent argues that this claim is procedurally defaulted. The claim is more easily disposed of on the merits, however, and the court therefore elects to bypass the default issue. See Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982) (court may exercise discretion to reach merits where doing so would be more efficient than adjudicating the question of procedural default).

Petitioner's Romero claim is a question of California law and is, therefore, not cognizable on federal habeas review. See Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002) ("[Petitioner] argued that he should be resentenced in light of the California Supreme Court's decision in *Romero*, . . . which held that judges have discretion not to count prior qualifying offenses as strikes. The district court correctly concluded that this state law claim is not cognizable on federal habeas review.") (internal citations omitted) (overruled on other grounds, 538 U.S. 901 (2003)). Nor can petitioner refashion this state claim into a federal one simply by casting it as a "due process" violation. See Little v. Crawford, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."); see also Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997).

Accordingly, this claim should be denied.

II.     Claim Two: Cruel and Unusual Punishment

A.  Petitioner's Allegations and Pertinent State Court Record

Petitioner argues that his overall sentence – which consists of an indeterminate sentence of seventy five years to life and a determinate, consecutive sentence of fifteen years – amounts to cruel and unusual punishment. Consequently, he contends that his Eighth Amendment rights have been violated.

B.  The Clearly Established Federal Law

The Eighth Amendment forbids the imposition of "cruel and unusual punishments." United States Constitution, Amend. VIII. The Supreme Court has held that "[a] gross disproportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade,

538 U.S. 63, 72 (2003). In Lockyer, the Supreme Court noted that the contours of the gross disproportionality principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73.

Three other Supreme Court cases are instructive. In Rummel v. Estelle, the Supreme Court upheld a life sentence under a Texas three-strike statute and emphasized that "for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." 445 U.S. 263, 274 (1980). In Solem v. Helm, the Supreme Court held that a life sentence without possibility of parole for a seventh non-violent felony – here, uttering a no account check for $100 – was cruel and unusual. 463 U.S. 277, 283-284 (1983). Finally, in Harmelin v. Michigan, the Supreme Court rejected an Eighth Amendment challenge where petitioner had been sentenced to a mandatory life sentence after being convicted of possessing 672 grams of cocaine. 501 U.S. 957 (1991).

"[F]ederal courts should be [reluctant] to review legislatively mandated terms of imprisonment and successful challenges to the proportionality of particular sentences should be exceedingly rare . . ." Hutto v. Davis, 454 U.S. 370, 374 (1982) (internal quotation marks and citations omitted).

C. The State Court's Ruling

The court of appeal rejected this claim in a reasoned decision:

> Defendant contends his sentence of 100 years to life plus 15 years constitutes cruel and/or unusual punishment under the state and federal Constitutions.
>
> Defendant's *Romero* motion did not include and is not a substitute for a claim that his sentence is cruel and unusual punishment. He likewise did not assert his sentence was cruel and unusual when the trial court imposed sentence. This forfeits his contention on appeal.[2] (*People v. Norman* (2003) 109 Cal.App.4th 221, 229 (*Norman* ).)
>
> Defendant's claim also fails on the merits. A punishment may violate the California Constitution if, although not "cruel or

---

[2] Defendant's section 1385 motion does not preserve the claim, as that motion does not substitute for litigation under the constitutional provisions prohibiting the imposition of a cruel and unusual sentence. (People v. Cole (2001) 88 Cal.App.4th 850, 868–869.) (footnote in original text).

11

unusual" in its method, the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.) Similarly, "an Eighth Amendment analysis requires a finding of 'gross disproportionality' between the offense and the offender and the punishment. [Citations.]" (*Norman*, *supra*, 109 Cal.App.4th at p. 230.)

Relying on a concurring opinion in *People v. Deloza* (1998) 18 Cal.4th 585, 600–602, in which Justice Mosk opined that a sentence that is impossible to serve is per se cruel and unusual, defendant contends his 100 years to life plus 15 years sentence is disproportionate to the current offenses even considering the current offenses and his criminal history. He further claims that a sentence which is "more than 85 years longer than the upper term second strike sentence that could be imposed for the same offenses and enhancements" is disproportionate to him as the offender and to his offenses.

This court has previously rejected reliance on Justice Mosk's concurrence. In *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231, this court wrote: " ' " [N]o opinion has value as a precedent on points as to which there is no agreement of a majority of the court. [Citations.]" [Citations.] Because no other justice on our Supreme Court joined in Justice Mosk's concurring opinion [in Deloza ], it has no precedential value.' Accordingly, there is no authority for defendant's argument." We again reject the theory that a sentence is cruel and unusual because it is impossible for a human being to complete.

Nor do the facts surrounding the commission of the offenses or an individualized assessment of the offender compel a different result. As noted above, we are well acquainted with the factors in mitigation applicable here, including defendant's age and his problem with methamphetamine. These factors do not tip the scale.

Defendant's lengthy and near continuous criminal record beginning as a juvenile (except while incarcerated), and the violent nature of his current and past offenses show that defendant is a serious threat to public safety when he is not incarcerated. His lengthy sentence is neither disproportional to the offense or the offender, and does not violate the state or federal prohibitions against cruel and/or unusual punishment.

Lodg. Doc. 11 at 13-15.

### D. Objective Reasonableness Under § 2254(d)

As before, the court finds it more efficient to reach the merits of this claim rather than take up respondent's argument of procedural default. See Cupp, 693 F.2d at 864.

Petitioner has failed to demonstrate that this is one of the rare cases which raises an inference of gross disproportionality. In Rummel, the Supreme Court upheld a life sentence

without the possibility of parole for fraudulent use of a credit card, passing of a forged check, and obtaining $120.75 under false pretenses. 445 U.S. 263 at 264-266. In <u>Harmelin</u>, 510 U.S. 957 at 1009, the Supreme Court determined possession of cocaine was sufficient to undergird a life sentence. The crimes underlying the immediate conviction are obviously more serious than the ones implicated in <u>Rummel</u> and <u>Harmelin</u> insofar as they involve robbery and the use and possession of firearms. Additionally, the court of appeal summarized the grave circumstances surrounding petitioner's prior strikes as follows:

> The prior strike offenses were not non-violent; they involved a burglary turned home invasion. It seems defendant could have walked away from the burglary, but instead confronted the victim and her young son. Defendant pulled the slide of his gun back and pointed the gun at the victim's head. The victim no doubt thought she and her son were going to be killed and she begged defendant to spare their lives. There is nothing mitigating about these offenses. Indeed, these offenses are extremely aggravating.

Lodg. Doc. 11 at 12-13. Based on the foregoing, the court of appeal's rejection of this claim was not contrary to or an unreasonable application of Supreme Court precedent.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. <u>See</u> 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file

////

////

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 21, 2017

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE